AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia



| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>1214 Stafford Drive, Princeton, West Virginia 24740 | )<br>)<br>) Case No. 1:19-mj-0012<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The business location of Smoke House of Grantsboro, dba Princeton Tobacco and Vape Outlet, located at 1214 Stafford Drive, Princeton, WV

located in the \_\_\_\_Southern\_\_\_\_ District of \_\_\_\_West Virginia\_\_\_\_, there is now concealed *(identify the person or describe the property to be seized)*:

Firearms, ammunition, Cocaine, Marihuana, United States currency believed to be proceeds derived from or used in the commission of a drug trafficking offense, cellular and electronic devices used in the commission of a drug trafficking offense.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 331(a) | Adulterated or misbranded drug/food product. |
| 21 U.S.C. § 841(a)(1) | Distribution of marihuana |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Eric A. Flagg, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 22, 2019

*Judge's signature*

City and state: Charleston, West Virginia    Omar J. Aboulhosn, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

LOCATIONS TO BE SEARCHED

    1.    The business location of Smoke House of Grantsboro, dba Princeton Tobacco and Vape Outlet is located at 1214 Stafford Drive, Princeton, West Virginia, which is in the Southern District of West Virginia. This location is further described as a retail store, with large glass windows containing numerous tobacco advertisements, and a glass and metal door front entrance facing Stafford Drive. This building has red, white and blue trim and is pictured below.



1

## ATTACHMENT B
### I. ITEMS TO BE SEIZED

1. Evidence, contraband, fruits, or instrumentalities of violations of The Food Drug and Cosmetics Act, namely: Title 21 U.S.C. 331(a), including, but not limited to:

    a. Adulterated, Misbranded products to include any products deemed to be Unapproved New Drugs, supplements, dietary supplements, any and all controlled dangerous substances to include non-prescription drugs;

    b. Business and/or personal records of product transactions and financial records and other records or documents reflecting diversion activity or the disposition of proceeds of any specified unlawful activity;

    c. Retained copies of federal, state, and local corporate, partnership, business, and personal income tax returns, including forms 1040, 1120, 1065, 1120 S; Forms W-2; Forms 1099; tax records; any supporting documentation, work papers and attachments; and any correspondence to/from taxing agencies;

    d. Notes of financial transactions *and/or* drug products transactions;

    e. Correspondence, *including electronic mail transmissions, letters, faxes, and notes*, relating to financial transactions *and/or* pharmaceutical products transactions, including the identification of customers, suppliers, associates, partners and co-conspirators;

    f. Bank records, including deposit slips, cancelled checks, withdrawal slips, and account statements, investment records, including brokerage statements, and credit and debit card records;

    g. Currency, bank checks, cashier's checks, negotiable financial instruments, wire transfer documentation, money orders, stocks, bonds, precious metals, and real estate records; and/or work sheets, tally sheets or ledger sheets reflecting or accounting for money received, disbursed or exchanged.

  h.  Financial statements, income statements, balance sheets, loan applications, cash receipts, cash disbursements, payroll, inventory, and journals and records; and any supporting work papers, schedules, attachments or documents, records of financial payments paid and received, records of personal and business expenses, safe deposit records and keys;

  i.  Post office box and private mail box records;

  j.  Transportation and/or shipment records, including but not limited to, accounts, bills, receipts and invoices, bills of lading, airway bills, freight bills, air cargo bills, dispatch records, logs, manifests, shipping documents, and invoices;

  k.  Credit applications, credit card statements and receipts;

  l.  Paper tickets, notes, schedules, receipts, and other items relating to travel;

  m.  Cellular and landline telephone statements and records;

  n.  Records that identify customers, suppliers, associates partners, and/or co-conspirators, including, but not limited to: address books, telephone books, rolodexes, telephones, pagers, or personal digital assistants with stored telephone information, notes reflecting telephone and pager numbers, photographs (to include still photos, negatives, movies, slides, video tapes), and recordings of conversations, including those made over telephone answering machines;

  m.  Identification documents, to include driver's license, passports, passport applications, visas, visa applications or similar documents and representative exemplars or original handwriting samples;

  n.  Indicia of occupancy, residency, and/or ownership of the premises, property and/or vehicles, including keys, photographs, or documents;

  o.  Documents showing custody and control of the premises or room where evidence is seized, including, but not limited to, utility and other bills, driver's licenses, passports, visas and other handwritten notes or other correspondence addressed to or from the occupants of the premises or room.

    p.  Items and paraphernalia for the manufacturing, distributing, packaging, sale, or weighing of pharmaceutical or related products, including scales and other weighing devices, plastic baggies, plastic bottles, glass bottles, sealing devices, packaging materials, master or bulk product containers, and money counters;

    q.  Any device used to facilitate the above-listed violations (and forensic copies thereof).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>1214 Stafford Drive, Princeton, West Virginia 24740 | Case No. 1:19-mj-0012 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Eric Flagg, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of an application for a search warrant for the business located at 1214 Stafford Drive, Princeton, West Virginia, which is the Southern District of West Virginia ("Princeton Tobacco and Vape Outlet "BUSINESS"), described more fully in Attachment A, which is incorporated by reference herein.

2. The requested search warrant seeks authorization to seize evidence, fruits, and instrumentalities of violations of Title 21 U.S.C. 331(a) (the introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded) and Title 21 U.S.C 841(a)(1) (the distribution or dispensing or possessing with the intent to distribute or dispense a controlled substance).

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF SPECIAL AGENT ERIC FLAGG

4. I am a Special Agent with the United States Food and Drug Administration-, Office of Criminal Investigations (FDA-OCI), and have been since September 2013. Prior to this employment, I was a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for approximately 11 ½ years. During my employment as a Special Agent with both the ATF and FDA-OCI, I have received training and have investigated a variety of criminal offenses involving firearms, explosive, narcotic, tobacco and prescription drug violations to include diversion and smuggling. I have conducted investigations involving the sale of illicit tobacco and drugs through the use of the internet. Additionally, I have used the internet and email in an undercover capacity to communicate with several subjects while investigating their illegal activities.

## III. SUMMARY OF PROBABLE CAUSE

5. In January 2019, the FDA Office of Criminal Investigations (OCI) initiated an investigation focused on entities holding for resale, products labeled with drug claims, which are not FDA approved drugs. Some of these products are labeled as dietary supplements, which make claims to relieve pain, slow and/or stop the spread of cancer cells, help with the treatment of osteoporosis and other ailments. The products at the focus of this investigation are said to contain CBD (Cannabidoil) and are labeled as being THC-free (tetrahydrocannabinol). In June 2018, the FDA announced the first, and to date, only approved drug containing CDB, Epidiolex. This drug was approved as treatment for two forms of seizures associated to epilepsy. None of the products sold as part of this investigation are approved FDA drugs.

6. Your affiant is aware that business records show that the Smoke House of Grantsboro, dba Princeton Tobacco and Vape Outlet ("BUSINESS") is owned and operated by Saleh SALEM and Hafdalla Mortez AL-AHDAL. Through this business, SALEM and AL-AHDAL sell and distribute misbranded food products (to include dietary supplements) in violation of FDA law.

## IV. STATEMENT OF PROBABLE CAUSE

7. Based on my review of records and documents received subsequent to grand jury subpoenas, physical surveillance of the target locations/subjects, undercover communications and

2

meetings with the target subjects, undercover purchases from the target business by myself or other undercover officers and my own investigation, I know the following information:

### A. UNDERCOVER PURCHASE OF CONTROLLED SUBSTANCE FROM THE PRINCETON TOBACCO AND VAPE OUTLET

8. Your affiant was advised by another undercover officer that on January 9, 2019, a purchase was made of two (2) products containing THC (tetrahydrocannabinol) from the target BUSINESS. On that date, the undercover officer traveled to and entered the BUSINESS during which time, he purchased a package labeled as "Mario Carts Sherblato Hybrid" containing "one gram of premium distillate 83-87% THC", and a package labeled as "Mario Carts Banana Kush Indica" containing "one gram of premium distillate 83-87% THC". Both packages contained a glass vial with an amount of a yellow colored liquid represented as being THC Oil. For this purchase, the undercover officer paid the store clerk, identified as Mehdha Salem $100.00.

9. Subsequently, thee products were tested by the Drug Enforcement Administration's laboratory and were found to contain THC (tetrahydrocannabinol) as labeled. The amount of detectable THC was in an amount greater that 0.3% by volume. THC is a schedule I controlled substance.

### B. UNDERCOVER PURCHASE FROM PRINCETON TOBACCO AND VAPE OUTLET

10. a. On January 25, 2019, your affiant traveled to the Princeton Tobacco and Vapor Outlet, 1214 Stafford Dr, Princeton, WV. Upon entering the store, your affiant encountered two (2) employees0 later identified as Munassar SALEM and Salem ALMARDEAI, who were both working behind the counter. Your affiant spoke with SALEM stating that I was looking for a product that could help with joint pain and arthritis. SALEM said that they had several products that could help with pain. SALEM pointed out a flyer in a display case on the counter for Koi brand CBD products. I reviewed this flyer which stated that Koi products could help with ailments/diseases such as cancer, asthmas, bone density and could improve motor functions. I again mentioned about looking for a product to relieve joint pain. SALEM then proceeded to show me several products that he said could help, to include what appeared to be a topical cream called Hemp Bomb Pain Freeze and several other

3

Hemp Bomb brand products. All of these products were labeled with statements claiming to provide pain relief.

   b.  Your affiant purchased five (5) products from SALEM labeled as Hemp Bomb Pain Freeze, Hemp Bomb CBD vape tank (cartridge), Hemp Bomb CBD capsules and Hemp Bomb CBD gummies and one (1) sealed CBDDISTROS brand CBD flower king-sized cone (cigarette).

   c.  Upon examining the packaging for the Hemp Bomb brand products, your affiant found drug statements claiming to relieve pain. Therefore, these products are misbranded pursuant to 21 USC 343.

   C.  **UNDERCOVER VISIT TO PRINCETON TOBACCO AND VAPE OUTLET.**

11. On March 22, 2019, your affiant again traveled to the Princeton Tobacco and Vape Outlet. During this visit, only ALMARDEAI was observed working in the store. While in the store, your affiant observed the same brands of products for sale as previously seen and purchased. These included the Hemp Bomb brands as well as the KOI brand products.

   D.  **UNDERCOVER PURCHASE FROM PRINCETON TOBACCO AND VAPE OUTLET**

12. On April 18, 2019, your affiant returned to the Princeton Tobacco and Vape Outlet. Upon entering the store, your affiant spoke with white male who working behind the counter. During this conversation, your affiant inquired about purchasing a CBD product that could help alleviate joint pain and swelling as well as arthritis. The white male told your affiant that several of the CBD type products displayed for sale could help with these ailments to include topical creams, capsules, vapes and CBD flower cigarettes. After discussing the various products, and on the advice of the clerk, your affiant purchased a jar of Hemp Bomb brand "Pain Freeze" topical pain relief cream and a two (2) tablet packet of "ecocaps" hemp extract. The Pain Freeze cream was labeled stating "instant pain relief". The "ecocaps" were labeled as dietary ingredient and listed Cannabidiol (CBD) as one of two principal ingredients. As such, by containing Cannabidiol, this product may not meet the definition of a dietary supplement as Cannabidiol is not currently an approved dietary ingredient, thus making this product misbranded. The drug claim on the Pain Freeze product would indicate that product as a drug, which it is not, and therefore is also misbranded.

### E. TRAINING AND EXPERIENCE ON FDA OFFENSES

13. Based on my training, experience, and participation in this and other FDA offense related investigations and upon my consultation with other experienced law enforcement officers, I am aware of the following:

    a. Based on your affiant's training, knowledge and experience, it is common for those possessing, distributing and/or selling contraband products to secure proceeds of sales, records of transactions, products sources, customer lists, addresses, telephone numbers, sums of money, and sources of supply, which they utilize in the commission of their illicit activities, in secure locations within banking institutions (safe deposit boxes), residences, and/or vehicles, for ready access and also to conceal such items from law enforcement authorities.

    b. Your affiant knows that pursuant to Title 21 U.S.C. Section 321(ff), the definition of a dietary supplement is in part, "(1) a product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients: (A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E); and (3) (B) does not include – (i) an article that is approved as a new drug under section 355 of this title, certified as an antibiotic under section 357 of this title, or licensed as a biologic under section 262 of title 42, or (ii) an article authorized for investigation as a new drug, antibiotic, or biological for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public.

    c. Your affiant knows that pursuant to Title 21 U.S.C. Section 321(g)(1), the definition of a drug is in part, "(B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animal...".

    d. Your affiant knows that pursuant to Title 21 U.S.C Section 321(m): "The term "labeling" means all labels and other written, printed, or graphic matter (1) upon any article or any of

5

of its containers or wrappers, or (2) accompanying such article". As such, labeling is inclusive of product descriptions provided in pamphlets, brochures and/or on product websites.

  e. Your affiant knows that pursuant to Title 21 U.S.C Section 321(k), "The term "label" means a display of written, printed, or graphic matter upon the immediate container of any article; and a requirement made by or under authority of this chapter that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper."

  f. Your affiant knows that pursuant to Title 21 U.S.C. 342 (f)(1)(B), a food product is considered adulterated, "If it is a dietary supplement or contains a dietary ingredient that is a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury".

  g. Your affiant knows that pursuant to Title 21 U.S.C 343, (a) (1), a food product is considered misbranded if (1) its labeling is false or misleading in any particular; or (2) in the case of a food to which section 350 of this title applies, its advertising is false or misleading in a material respect or its labeling.

  **F.** **AGRICULTURAL IMPROVEMENT ACT (FARM BILL)**

14. On December 20, 2018, President Trump signed into law H.R. 2, the Agricultural Improvement Act (also known as the Farm Bill). Pursuant to this legislation, and in summary, oils extracted from the Hemp plant which contain low levels of THC (9-delta-tetrahydrocannabinol) specifically those not greater than 0.3 percent by weight were removed from classification of a controlled substance as defined by the Controlled Substance Act. This legislation allowed for the production and sale of products containing this oil, commonly referred to as CBD (cannabidiol), as long as the amount of THC in these products did not exceed 0.3% by weight. Products found to have THC in amounts exceeding 0.3% would be regulated as a controlled substance pursuant to the Controlled Substance Act.

## G.     **CONCLUSION**

15.    For all the reasons described above, your affiant believes that there is probable cause to issue a search warrant for

- The business Smoke House of Grantsboro, dba Princeton Tobacco and Vape Outlet, located at 1214 Stafford Drive, Princeton, West Virginia.

- To allow a search for and seizure of evidence of and instrumentalities used to facilitate violations of:

- Title 21 U.S.C. 331(a) (the introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded);

Additionally, there is probable cause to believe that there will be present a quantity of misbranded and/or adulterated products as well as documents and instrumentalities of the acquisition, purchase, possession, transfer, sale and/or distribution of products in violation of the Food, Drug and Cosmetic Act in support of this illegal activity, such as those listed in the Attachment to this affidavit which is incorporated herein by reference.

Respectfully submitted,

_____
Eric Flagg
Special Agent
Office of Criminal Investigations
Food and Drug Administration

Subscribed to and sworn before me
this 22 day of April, 2019.

_____
Omar J. Aboulhosn
United States Magistrate Judge